UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JUAN ESBER MANZUR,<br><br>                      Plaintiff,<br><br>vs.<br><br>STEPHEN K. MONTOYA, *et al*.,<br><br>                      Defendants. | Case No. 2:07-cv-00603-JCM-GWF<br><br>**FINDINGS AND**<br>**RECOMMENDATIONS** |

      On May 7, 2007, Plaintiff brought a civil rights suit against Stephen K. Montoya, M.D., President of the Nevada State Board of Medical Examiners (the "Board"), and Warden Neven, as Warden of High Desert State Prison. On July 3, 2007, District Judge James C. Mahan dismissed Court II of Plaintiff's complaint for failure to state a claim and dismissed any and all claims against Warden Nevens. Plaintiff was allowed to proceed in Count I of his complaint against Defendant Montoya.

      On February 8, 2008, Magistrate Judge George Foley, Jr. denied Plaintiff's Motion to Change Named Defendant Montoya to Nevada State Board of Medical Examiners (#28) and ordered Plaintiff to submit a proposed amended complaint identifying all parties and claims for relief in this action.

      On February 20, 2008, Plaintiff filed his Amended Complaint (#51) naming the President of the Nevada State Board of Medical Examiners, as head of the Board and in his official capacity, and the Board members John Does (I through X), in their individual capacities, as defendants.

      On March 3, 2008, Defendant Montoya filed his Motion to Stay Proceedings Pending Screening of Amended Complaint (#55).

**BACKGROUND**

In his original civil rights suit, Plaintiff alleges that on June 3, 2005, Stephen K. Montoya, M.D., then President of the Board, acting under color of state law, violated his constitutional right of procedural due process by illegally revoking his medical license. Plaintiff alleges that under NRS 630, Defendant Montoya is prohibited from revoking Plaintiff's medical license based on Plaintiff's felony convictions and arrest. Plaintiff further alleges that the Board misrepresented facts by finding that Plaintiff: (1) committed "medical disreputable offenses," (2) suffers from a mental condition as a result of drugs and alcohol addiction, (3) tested positive for amphetamines and that such testing was never performed, and (4) was never informed of the June 3, 2005 meeting to revoke Plaintiff's medical license and further impeded Plaintiff's due process defense because the Board's official stance was announced by a Board official to a Las Vegas news channel. Plaintiff further alleges that the Board's actions to revoke his medical license was in bad faith because Plaintiff was not informed of the meeting to revoke his medical license and was led to believe that his medical license was not in jeopardy.

In his amended complaint, Plaintiff asserts that the President of the Board and the Board members violated his Fifth and Fourteenth Amendment due process rights of property protection by revoking his medical license. Plaintiff further alleges that the President of the Board and the Board members are continuing to violate his procedural due process rights by not returning his medical license to him.

Plaintiff also asserts in his amended complaint that the President of the Board and the Board members violated and continue to violate his Fourteenth Amendment right to equal protection under the law by the "continued taking" of Plaintiff's medical license.

**DISCUSSION**

**I.      Absolute Immunity**

"Absolute immunity is generally accorded to judges and prosecutors functioning in their official capacity." *Olsen v. Idaho State Bd. Of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004) (citing *Stump v. Sparkman*, 435 U.S. 349, 364, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). "This immunity reflects that long-standing 'general principle of the highest importance to the proper administration of justice that a judicial officer, in

exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Olsen*, 363 F.3d at 922 (quoting *Bradley v. Fisher*, 80 U.S. 335, 13 Wall. 335, 347, 20 L.Ed.646 (1871)); *see also Mishler v. Clift*, 191 F.3d 998, 1003 (9th Cir. 1999) ("The essential rationale is that, without protection from retaliatory suits, a judge would lose 'that independence without which no judiciary can be either respectable or useful.' A prosecutor's entitlement to absolute immunity flows from the performance of activities that are intimately associated with the judicial process.")

"The Supreme Court has also held that executive branch officials, when participating in a federal administrative agency's adjudicative process, are entitled to absolute immunity because they perform functions comparable to those of judges and prosecutors." *Id.* (citing *Butz v. Economou*, 438 U.S. 478, 512-13, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)).

*Butz* held that the role of a hearing examiner in a federal agency was "'functionally comparable' to that of a judge." 438 U.S. at 513. "The *Butz* Court also held that agency officials performing functions analogous to those of prosecutors would be entitled to absolute immunity." *Id.* *Butz* noted that the "decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate ... criminal prosecution." *Id.* at 515.

"[C]ourts have extended the protections of absolute immunity to qualifying state officials sued under 42 U.S.C. § 1983. *Olsen*, 363 F.3d at 923 (citing *Miller v. Gammie*, 335 F.3d 889, 895-96 (9th Cir. 2003) (explaining that though § 1983 does not include a defense of immunity, "the Supreme Court has recognized that when Congress enacted § 1983, it was aware of a well-established and well-understood common-law tradition that extended absolute immunity to individuals performing functions necessary to the judicial process" (citing *Forrester v. White*, 484 U.S. 219, 225-26, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (superseded by statute))); *Buckley v. Fitzsimmons*, 509 U.S. 529, 268-69, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

The Supreme Court has never addressed the issue; however, two Ninth Circuit decisions have held that state medical boards and their officers enjoy absolute immunity for the non-ministerial acts that they commit in performing their duties. *Yoonessi v. Albany Medical Center*, 352 F.Supp.2d 1096, 1100 (C.D. Cal. 2005).

In *Mishler v. Clift*, the Ninth Circuit held that the members of the Nevada State Board of Medical Examiners are entitled to absolute immunity for their ministerial acts. 191 F.3d at 1009. *Mishler* was in accord with "well-established case law holding that medical board officials entitled to absolute immunity for their quasi-judicial and quasi-prosecutorial functions." *Olsen*, 363 F.3d at 923. (citing *Wang v. New Hampshire Bd. of Registration in Med.*, 55 F.3d 698, 702 (1st Cir. 1995) (holding that medical board's counsel entitled to absolute immunity for investigation surrounding disciplinary complaint); *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490-91 (10th Cir. 1991) (same); *Bettencourt v. Bd. of Registration in Med.*, 904 F.2d 772, 782-83 (1st Cir. 1990) (holding that board officials are absolutely immune from suit by physician whose license was revoked); *Horwitz v. State Bd. of Med. Exam'rs*, 822 F.2d 1508, 1515 (10th Cir. 1987) (holding that medical board members are entitled to absolute immunity)); *Yoonessi*, 352 F.Supp.2d at 1102-03 (holding that medical board officials are absolutely immune from suit by physician whose license was revoked). "Functions discussed in these cases include investigating charges, initiating charges, weighing evidence, making factual determinations, and issuing written decisions." *Mishler*, 191 F.3d at 1004.

In *Olsen v. Idaho State Board Bd. of Medicine*, 363 F.3d at 928-29, the Ninth Circuit relied on *Mishler* and held that the Idaho State Board of Medical Examiners and its members could not be sued for the quasi-judicial and quasi-prosecutorial actions they took while adjudicating a disciplinary dispute. *Yoonessi*, 352 F.Supp.2d at 1100.

Here, Plaintiff's allegations against Defendant Montoya relate to his official capacity as President of the Board. Defendant Montoya's alleged action of revoking Plaintiff's medical license is a quasi-judicial or quasi-prosecutorial function. Furthermore, Defendant Montoya's alleged findings that Plaintiff (1) committed "medical disreputable offenses," (2) suffers from a mental condition as a result of drugs and alcohol addiction, and (3) tested positive for amphetamines are quasi-judicial findings. The Court finds that absolute immunity applies to the quasi-judicial actions that Defendant Montoya committed while he was serving as President of the Board. Thus, Defendant Montoya is entitled to absolute immunity.

**II.   Scope of Absolute Immunity**

In *Mishler*, the Ninth Circuit held that "the protections of absolute immunity reach only those

4

actions that are judicial or closely associated with the judicial process." 191 F.3d at 1007 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) ("A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation of the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.")  Thus, the Ninth Circuit in *Mishler* held that acts committed during the disciplinary hearing process fall within the scope of absolute immunity; "holding hearings, taking evidence, and adjudicating are functions that are inherently judicial in nature." *Id.* at 1008.  In *Olsen*, the Ninth Circuit held that acts intimately related to the a Board member's adjudicatory role in licensing physicians are likewise entitled to absolute immunity.  363 F.3d at 928.  (citing *Horwitz v. Bd. of Medical Exam'rs*, 822 F.2d 1508, 1515 (10th Cir. 1987) (according absolute immunity to members of boards exercising authority to summarily suspend professional licenses)).

In contrast, ministerial acts that are not "closely associated with the judicial process ... fall outside the protections of absolute immunity." *Mishler*, 191 F.3d at 1008.  In *Mishler*, the Ninth Circuit did not apply absolute immunity to a Nevada Board member's failure to respond to inquiries from the Ohio Board of Medical Examiners. *Id.*  The Ninth Circuit held in *Mishler* that the board member's failure to act constituted an administrative function entailing examination of records and sending of correspondence was outside the protections of absolute immunity.  *Id.*  The Ninth Circuit in *Olsen* did not apply absolute immunity to acts pertaining to a state medical board's billing practices. 363 F.3d at 929.

Plaintiff's allegations that the President of the Board and the members of the Board illegally revoked his medical license and continue to "take" his medical license involve only actions closely related to the their respective roles in a quasi-judicial or quasi-prosecutorial process.  Plaintiff's allegations that the President of the Board and the members of the Board misrepresented facts by finding that Plaintiff: (1) committed "medical disreputable offenses," (2) suffers from a mental condition as a result of drugs and alcohol addiction, (3) tested positive for amphetamines and that such testing was never performed, and (4) was never informed of the June 3, 2005 meeting to revoke Plaintiff's medical license and further impeded Plaintiff's due process defense because the Board's official stance was announced by a Board official to a Las Vegas news channel cannot be classified as

ministerial or administrative in nature. Rather, the President of the Board and the members of the Board are related to their decision to revoke Plaintiff's license, which are quasi-judicial or quasi-prosecutorial in nature. Thus, their acts are entitled to absolute immunity.

### III.    Amended Complaint

In Plaintiff's Amended Complaint (#51), Plaintiff requests to join the members of the Board as Defendants. For the foregoing reasons, the Board is entitled to absolute immunity. The Court finds that Plaintiff cannot amend his complaint to state a viable cause of action against Defendant Montoya. The Court has already afforded Plaintiff one (1) opportunity to amend his complaint as to Defendant Montoya. Because Plaintiff's Amended Complaint (#51) states the same facts as Plaintiff's original complaint and offers no other relevant facts to support his claims, the Court finds that allowing an opportunity to amend the complaint against the President of the Board and the members of the Board would be futile. No matter how many times or ways in which Plaintiff attempts to amend his complaint, the Board's actions will always be subject to absolute immunity. *Yoonessi*, 352 F.Supp.2d at 1104. The Court further finds that Plaintiff cannot amend his complaint to state a viable cause of action against any of these Defendants as the Board's actions as stated in Plaintiff's complaint are entitled to absolute immunity. Accordingly,

**IT IS HEREBY RECOMMENDED** that Plaintiff's Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 (#1) should be **dismissed** based on Plaintiff's failure to state a claim upon which relief may be granted.

**IT IS FURTHER RECOMMENDED**  that Plaintiff's Amended Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 (#51) should be **dismissed** based on Plaintiff's failure to state a claim upon which relief may be granted.

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within ten (10) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the

objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 20th day of March, 2008.

/s/ George Foley Jr.
**GEORGE FOLEY, JR.**
**UNITED STATES MAGISTRATE JUDGE**